### SWIFT, ADMINISTRATOR, v. HARLEY ET AL.

[No. 2,055.    Filed March 30, 1898.    Rehearing denied Oct. 4, 1898.]

SPECIAL FINDING.—*Executors and Administrators.*—*Exceptions to Report.*—*Practice.*—The trial court may make a special finding of facts and state its conclusions of law thereon, as provided by section 551, Horner's R. S. 1897, in the trial of exceptions to an administrator's report.    *pp. 616, 617.*

SAME.—*Objections.* —*When Made for First Time on Appeal.*—*Appeal and Error.*—Where no objections were interposed by the complaining party in the court below to the court making a special finding of the facts he will not be heard to complain of same on appeal. *p., 617.*

PRACTICE.—*Venire De Novo.*—A *venire de novo* should be granted where a verdict or finding is so imperfect, ambiguous, or uncertain that it will not support a judgment.    *p. 618.*

SAME.—*Venire De Novo.*—A written motion need not be made for a *venire de novo.    p. 618.*

EXECUTORS AND ADMINISTRATORS.—*Reports.*—*Exceptions.*—An administrator's report may be contested by exceptions filed thereto. *p. 619.*

EXECUTORS AND ADMINISTRATORS.— *Decedents' Estates.—Claims.— Mortgages.—* An administrator of a decedent's estate is properly credited in his report as such administrator with the amount of a mortgage assumed by decedent in his lifetime in the purchase of real estate, paid by such administrator, although the mortgage was not filed as a claim against the estate. *pp. 619-625.*

From the Hamilton Circuit Court. *Reversed.*

*William Farrell, Kane & Kane* and *Elliott & Elliott,* for appellant.

*W. R. Fertig, H. J. Alexander* and *George Shirts,* for appellees.

WILEY, J.—Appellant was the administrator of the estate of John Swift deceased, with the will annexed. February 13, 1895, he filed a current report, and on May 13, following, appellees filed exceptions thereto. The issues raised by the report and exceptions were tried by the court, and on motion of appellant, the court made a special finding of facts, and stated its conclusions of law thereon, and rendered judgment against appellant for $3657.18, disapproving his report, and directing him to amend the same, and to pay into court the amount found to be due. Appellant moved for a *venire de novo,* a new trial, and to modify the judgment, each of which motions the court over-ruled. Neither the special finding of facts, conclusions of law or judgment specifically show or state what exceptions were sustained and what overruled.

Appellant has assigned errors as follows: (1) The court erred in sustaining each and every one of the exceptions to the report; (2) the court erred in overruling each of the several exceptions to each and every conclusion of law; (3) the court erred in overruling the motion for a *venire de novo*; (4) the court erred in overruling appellant's exception to the judgment; (5) the court erred in overruling appellant's motion for a new trial.

From the report and the entire record it appears that appellant's decedent died intestate, leaving quite an estate, both in personal and in real property. The exceptors (the appellees here), are heirs and devisees of the decedent, and as such excepted to the report.

Soon after appellant took upon himself the administration of the estate, the appellees and others, who were all the heirs and devisees of the decedent, by power of attorney, constituted appellant their attorney in fact and agent, with full power and authority to lease, sell, and convey the real estate of which the decedent died seized. Appellant accepted said appointment and acted thereunder, and did lease, sell and convey real estate. The funds coming into his hands as administrator, and those derived by virtue of his agency, created by said power of attorney, were intermingled in some instances, and in his report he so represented to the court. His accounts as administrator and as such agent, are somewhat confused as shown by the report and the special findings of fact.

We do not deem it necessary to set out in this opinion, in detail, at length or specifically, the special findings, for every useful purpose will be subserved by referring to them in the course of the discussion and decision of the questions presented.

It is contended with much earnestness and plausible argument of appellees' learned counsel, that the provisions of the statute (section 551, Horner's R. S. 1897) are not applicable here, and hence the special finding should be wholly disregarded. This exact question has never been passed upon by the courts of last resort of this State, but we are inclined to think that the objections urged against considering the special findings, as such, are not available here. While the proceedings to test the correctness of an administrator's report is not, in a broad and technical sense,

a civil action, yet the report and the exceptions form both issues of fact and of law, for the court to determine, and we are unable to see any valid objections to the court making a special finding of facts and stating its conclusions of law thereon. On the contrary, there are good reasons why the practice is commendable.

Where a special finding of facts is made, it brings to the attention of the appellate tribunal, in case of appeal, all the disputed facts, in an orderly and succinct form, and greatly aids the court in applying the law to them, and in determining the respective rights of the parties. But another reason why appellees' contention should not prevail in the case we are now considering, is that they did not interpose any objection in the court below to its making a special finding of facts, and they should not be heard to complain now. But in addition to the reasons here given, the practice has been recognized, and at least tacitly approved by the Supreme Court. *Taylor* v. *Wright, Admr.*, 93 Ind. 121, is directly in point. There appellee filed his report in final settlement, and appellant appeared and filed exceptions. The questions presented by the issues thus joined, were tried by the court, a special finding of facts made and conclusions stated thereon. By its conclusions of law, the trial court appoved the report. On appeal it was held that the court erred in its conclusions of law. On the facts found, the judgment was reversed, and the court below instructed to reject the report, and require the appellee to file an amended report, etc. So we are not without precedent for holding that in cases of this character a trial court may make a special finding of facts and state its conclusions of law thereon.

The first question which we will consider is that raised by the third specification of the assignment of

errors.   If the court erred in overruling appellant's motion for a *venire de novo*, the other questions presented will not necessarily have to be decided.   The general rule prevails in this jurisdiction that a *venire de novo* will be awarded where a verdict or finding is so imperfect, ambiguous, or uncertain that it will not support a judgment.   Under the practice in this State, a written motion need not be made, but the question may be presented and raised orally.

In the case before us, however, appellant's motion for a *venire de novo* was in writing, and the grounds assigned are: (1) "The facts are not stated in the finding; (2) the finding states conclusions and not facts; (3) the finding states matters of evidence and not facts; (4) the conclusions of law were not stated on the facts found at the time of the filing and entry of record thereof as the law requires."   As to whether appellant is limited within the bounds of his motion, we do not decide.

There are three propositions, about which it seems to us, there can be no doubt or controversy, and they are these: (1) As administrator appellant was chargeable only with the personal assets of the estate that came into his hands as such, and for any defalcation or misappropriation of such funds, he and his sureties were liable.   (2) As attorney in fact, and agent of appellees, he was chargeable only with the funds and assets that came into his hands as such agent, and for any defalcation or misappropriation of such funds, he and he alone was liable.   (3) The settlement of the estate, in his trust capacity as administrator, had no dependent connection with or relation to the duties imposed upon him in his trust capacity as agent.   The two trusts were wholly independent, and the one should not in any manner be connected with the other.

When an administrator files a report, the court

may, not only by its statutory, but by its inherent power, approve or reject it and order the filing of a new report. Section 2391, Horner's R. S. 1897, defines the power and duty of the court on the presentation of such report, and provides that "any person interested in the distribution of the assets may appear and contest the correctness of the account." While the statute does not provide the manner of contesting the correctness of the account, it is settled by the practice in this State, that it may be done by exceptions. The real question, therefore, in this case, is to determine if we can, from the facts found, the several amounts with which appellant is chargeable as administrator, and for which he is entitled to credit.

One of the exceptions to the report was that appellant paid $1,241.30 in discharge of a mortgage on land in Kansas, which decedent owned at the time of his death, and for the sum so paid, he was not entitled to credit. We will first take up and dispose of this question. The special finding of facts shows that decedent purchased a tract of land in Kansas, upon which there was a mortgage, and in the deed conveying to him the land it was stipulated that the conveyance was made subject to said mortgage, and that the decedent assumed the payment of the same. There was no express agreement in the deed that decedent would pay the mortgage. Appellant, under his power of attorney, took charge of said land, leased it, collected the rents, paid taxes, and kept up repairs. Under said power of attorney he advertised said real estate for sale, and in such advertisement he designated himself as administrator, and that said sale would be made as an administrator's sale. This mortgage which decedent assumed to pay was never filed as a claim against his estate, and in all of his transactions relating to said real estate, the appellant

designated himself as administrator. He paid said mortgage including interest, principal, and exchange, in the sum above specified, by a draft purchased by him at a bank where he kept his account, with his individual check, and the finding recites that, "there is no evidence that the funds used in purchasing said draft were proceeds of personal estate which had come into his hands as administrator, and no evidence that he made or assumed to make such payments in the capacity of administrator." The finding further shows that appellant mingled the proceeds received from the real estate with the proceeds of the personal estate, and deposited them in the same bank in his own name, and in his individual account. He paid said mortgage June 17, 1891, and on February 13, 1893, under his said power of attorney, he sold said Kansas land for $1,400, which sum the findings declare he converted to his own use. Upon these facts, the court, in its conclusions of law, stated that appellant was not entitled to a credit in his report for the amount so paid on said mortgage.

Before considering the legal question here presented, we desire to say that the findings show that the decedent directed by his will the payment of all his debts without specifying the order in which they should be paid. By the contract of assumption in the deed, decedent created a debt against himself, and if he had lived, it could have been enforced against him in his individual capacity. He was personally liable, and by his assumption he became the principal debtor. *Figart* v. *Halderman*, 75 Ind. 564; *Hancock* v. *Fleming*, 103 Ind. 533; *Begein* v. *Brehm*, 123 Ind. 160.

True, the mortgage was not filed as a claim against the estate, but the debt it evidenced was a lien upon real estate, and while there may have been some irregularity in the manner of its payment, it neverthe-

less was the duty of the administrator to pay it, both by the provisions of the statute and the express terms of the will. Under the statute, mortgage debts have precedence over general debts. Section 2534, Burns' R. S. 1894 (2378, Horner's R. S. 1897). If the administrator had refused to pay the mortgage, and suffered a foreclosure, he would have been liable on his bond for any resulting injury. *State, ex rel.,* v. *Mason,* 21 Ind. 171; *Jewett* v, *Hurrle,* 121 Ind. 404. The personal estate of a decedent is primarily liable for the payment of his debts, and it has never been held that a decedent's real estate may be sold to pay debts where the personal assets are sufficient to do so. This rule rests upon the ground that the real estate shall be preserved and saved for the heirs. See *La Plante* v. *Convery,* 98 Ind. 499; *State, ex rel.,* v. *Brown,* 80 Ind. 425; *Cunningham* v. *Cunningham,* 94 Ind. 557.

Appellees contend that the finding of the court is that appellant paid this mortgage as attorney and agent, and hence is not entitled to credit for the amount paid. We do not so construe the finding. The court found that, as attorney and agent, he took charge of the Kansas land, etc., and that there is no evidence that the funds with which he paid it were proceeds of the personal estate, etc. That he had funds on hand, as proceeds of the personal estate, when he made the payment, there seems to be no question. It was his duty to pay the mortgage, and to pay it out of the proceeds of the personal estate; and, in the absence of any evidence to the contrary, it will be presumed that he did pay it out of such proceeds. This presumption arises from the fact that an officer or trustee is presumed to do his duty. See *Cummins* v. *City of Seymour,* 79 Ind. 491, 41 Am. Rep. 618; *Benefiel* v. *Aughe,* 93 Ind. 401; *Baker* v. *Merriam,* 97 Ind. 539; *State, ex rel.,* v. *Sutton,* 99 Ind. 300; *Enos*

v. *State, ex rel.,* 131 Ind. 560.   An administrator is an officer of the court, for he acts in a fiduciary capacity, and his duties are prescribed by statute, and he is under the direct supervision and control of the court. The presumption prevails until it is overthrown by facts showing the contrary.   *Louisville, etc., R. W. Co.* v. *Thompson,* 107 Ind. 442.   This rule that an officer is presumed to do his duty has been extended even to railway companies, employes, and officers, etc. See *Louisville, etc., R. W. Co.* v. *Bates, Admr.,* 146 Ind. 564, and cases there cited; Elliott on Railroads, section 1701; *Joyner* v. *South Carolina R. W. Co.,* 26 S. C. 49, 1 S. E. 52; *Jewett* v. *Kansas City, etc., R. W. Co.,* 50 Mo. App. 547; *Uline* v. *New York, etc., R. R. Co.,* 101 N. Y. 98, 4 N. E. 536.

The findings relating to the Kansas land are negative in their character and are so uncertain and ambiguous that, in our judgment, we cannot say, as a matter of law, that appellant is not entitled to a credit for the amount paid by him in discharge of the mortgage.   While we have not overlooked the well established and firmly grounded rule that the burden was upon the appellant to establish his right to a credit for $1,241.30, as asked in his report, yet we cannot say he was or was not entitled to such credit from the facts found, because the findings fail to show sufficient facts upon which the court can adjudge, as a matter of law, the respective rights of the parties.

In its first conclusion of law the court declares as one of the items with which appellant is chargeable as administrator is "profit on Wheeler land sold to Mrs. Ford, $192.50."   We are unable to understand upon what basis or finding of fact, this conclusion of law can securely rest.   Where special findings of facts are made, the conclusions of law must pertain to such facts, and can only be upheld when applicable thereto.

While we must be guided as to the facts by the special findings, we have examined the exceptions to the report with very great care, and find that there is no exception upon which such conclusion can rest.

Exception five seeks to charge appellant with $154.00 as "excess from Wheeler land," but there is not even an exception to the report asking that he be charged with "profit on Wheeler land, etc." If there is a word in the special findings referring directly or remotely in any way to "Wheeler land," we have failed to find it, after most careful and repeated examinations. The report refers to some transactions of appellant regarding the "Wheeler land," but we cannot look to the report for the facts upon which the court bases its conclusions of law.

Referring to findings three and four, the following facts are stated: (3) That the appellant's report as administrator contains a true and correct statement of all charges against him, and all assets for which he is accountable, except $966.45, net amount realized by sale of Tipton city property on which he took a mortgage of indemnity, and except interest on his distributive share, with which he should be charged to balance like charges for interest made in said report against other heirs. (4) That all items of credit claimed in said report should be allowed, except credits claimed for moneys distributed to heirs, and except $1,241.30 paid on Kansas land, and except $1,237.85 paid to S. Snively.

Finding number three purports to be a finding of all charges, of whatsoever kind and character, against appellant in his trust capacity, with the exception of two items,—one of $966.45, on the sale of Tipton city property, and the other on account of interest on his distributive share, etc. There is no finding that appellant was a distributee under the will, or an heir of

the decedent, which would entitle him to share in the estate. There is no finding when payments were made to him as a distributee, how much was paid to him, and what the interest charge would be; and there is no finding that he was indebted to the estate upon a note. In finding number twenty-six, some reference is made to undescribed notes by reference to certain numbers on the inventory; but the inventory is not made a part of the record, and, if it was, we could not look to it to determine a substantive fact.

From this statement of facts as to charges and credits, we turn to the conclusions of law, to determine whether the conclusions of law are consistent with the findings. Conclusion of law number one is as follows:

"(a) That said administrator should stand charged with the amount of charges shown in said report.................$16,658.80

(b) With net amount of said Tipton property on which he took said mortgage of indemnity ...........................    966.45

(c) With interest on his note to the decedent and with interest on his distributive share to balance like charges against other heirs ...........................    128.00

(d) With profit on Wheeler land sold to Mrs. Ford ...........................    192.50

Total ...........................$17,945.75."

From the facts we have already stated, we are unable to see how the trial court concluded, as a matter of law, that appellant was chargeable with $192.50 as "profit" on the Wheeler land. And what we have said in regard to the last item applies with equal force to the item for $128.00, which, as stated by the

court, consists of interest on a note and on the distributive share of appellant. For these reasons, appellant's motion for a *venire de novo*, and his exceptions to the conclusions of law, charging him with $1,241.30, amount paid on the Kansas land, with $192.50 profit on the Wheeler land, and $128.00 interest on note and his distributive share, etc., should have been sustained. In so holding, we do not wish to be understood as deciding that these items are improper charges against appellant, for facts may exist which would make him chargeable with them; but what we decide here is, that under the facts found, the court cannot say, as a matter of law, that he is chargeable with them. An administrator, acting in his fiduciary capacity, cannot be held to too strict an account in the conduct and management of his trust, and courts will construe the law strictly against him in the interest of the estate. In this jurisdiction the boundary lines of his liability are distinctly drawn and clearly marked. While the law will charge him with all the assets of the trust with which he should be charged, it will not impose upon him liabilities and hardships not warranted by facts.

There are other questions presented by the record, and discussed by counsel, but we do not deem it necessary to decide them, as they may not arise on a subsequent trial of the case, and the judgment must be reversed for the reasons given. Judgment reversed, with instructions to the court below to sustain appellant's motion for a *venire de novo*, and for further proceedings not inconsistent with this opinion.