Olin P. **BELL**, Appellant (Plaintiff),

v.

Max **BINGHAM**, Beverly Ann Bingham, and John W. Vironet, Appellees (Defendants).

No. 2–984–A–270.

Court of Appeals of Indiana, Second District.

Oct. 31, 1985.

Dean E. Richards, Richards, Caress, Vargo, Light and Brown, Indianapolis, for appellant.

James M. Secrest, James M. Secrest, P.C., Indianapolis, for appellees Max Bingham and Beverly Ann Bingham.

Larry E. Swick, Elwood, for appellee John W. Vironet.

BUCHANAN, Chief Judge.

### CASE SUMMARY

Plaintiff-appellant Olin P. Bell (Olin) appeals the trial court's entry of summary judgment in favor of defendants-appellees Max and Beverly Ann Bingham [hereinafter collectively referred to as the Binghams] and John W. Vironet (Vironet) claiming the trial court erred by denying as untimely his petition to foreclose a judgment lien and his claim against Vironet, the sole distributee of the estate of Mary Ellen Bell (Mary).

We affirm.

### FACTS

The facts viewed in a light most favorable to Olin are as follows: Olin and Mary were divorced in 1978 pursuant to a decree issued by the Madison Superior Court. In pertinent part, the decree provided:

"The Court approves the oral property settlement, to-wit: Petitioner (Mary) shall pay over to respondent (Olin) the sum of twenty-two thousand five hundred dollars ($22,500.00) in the form of an alimony judgment as defined under the Federal Law. That said twenty-two thousand five hundred dollars will be payable over a period of ten years and one month.... That further, the nursing home, all equipment, inventory, all personal items, real estate are set over to petitioner including the residence next door at 623 Adams will be turned over to her as her sole property and *that respondent have no further interest in said*

*real estate at 623 or 625 Adams whatsoever."*

*Record* at 172–73 (emphasis supplied). Olin received regular monthly payments of $185.00 through March 22, 1980.

Mary died on March 21, 1980. Vironet, Mary's son, opened her unsupervised estate in the Madison Superior Court. Vironet was appointed executor and published notice to creditors on April 30, 1980 and May 7, 1980. On February 19, 1981, the court approved a land sale contract entered into by Mary before her death. As executor, Vironet completed the land sale contract and conveyed the real estate located at 623 Adams Street to the Binghams. Vironet paid all the claims filed in Mary's estate. As the only distributee of Mary's estate, Vironet collected his bequest and closed the estate on April 24, 1981.

Over two years after Mary's death, in November of 1982, Olin filed suit against the Binghams and Vironet claiming that he was a secured creditor of Mary's estate because his "alimony" judgment was a lien against the property which had been conveyed to the Binghams, and that as sole distributee Vironet was responsible to Olin for Olin's claim up to the amount Vironet received from the estate. The trial court granted summary judgment in favor of the Binghams and Vironet, and Olin appeals.

## ISSUE

The sole question presented for our review is:

Whether the trial court erred by granting summary judgment in favor of Vironet and Binghams?

## DECISION

PARTIES' CONTENTIONS—Olin contends the judgment against Mary was a lien against her real estate so that compliance with the five month claim statute was unnecessary and his judgment may be satisfied from either Binghams' real estate or Vironet's assets by an action brought within three years of Mary's death. Binghams respond that the divorce decree was payable in installments, therefore no lien arose. Vironet argues Olin's action is barred because no timely claim was filed against Mary's estate.

CONCLUSION—The trial court did not err by granting summary judgment in favor of Vironet and Binghams because the divorce decree did not attach as a lien to Mary's real estate.

■ Summary judgment is appropriate when the pleadings, affidavits, testimony, and products of discovery demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *McMahan v. Snap On Tool Corp.* (1985), Ind.App., 478 N.E.2d 116; *Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170; Ind.Rules of Procedure, Trial Rule 56.

We recognize that more than one statute regulates the manner in which certain creditors are assured payment of their money judgments. Our general judgment lien statute, codified at Ind.Code 34–1–45–2 (1982), provides as follows:

"All final judgments for the recovery of money or costs in the circuit court and other courts of record of general original jurisdiction sitting in the state of Indiana, whether state or federal, shall be a lien upon real estate and chattels real liable to execution in the county where, and only where, such judgment has been duly entered and indexed in the judgment docket as provided by law, from and after the time the same shall have been so entered and indexed, and until the expiration of ten [10] years from the rendition thereof, and no longer, exclusive of the time during which the party may be restrained from proceeding thereon by any appeal or injunction or by the death of the defendant, or by agreement of the parties entered of record."

[Hereinafter cited as the judgment lien statute]. Additionally, in dissolution actions a trial court must, absent an agreement of the parties, divide the parties' property, and the court may require some assurance of payment of the property divi-

sion. IC 31–1–11.5–11 (1982); IC 31–1–11.-5–15. [Hereinafter collectively cited as the dissolution statutes]. IC 31–1–11.5–15 provides as follows:

"Security for Payment. Upon entering an order pursuant to section 11 or 12 of this chapter, the court may provide for such security, bond or other guarantee that shall be satisfactory to the court to secure the obligation to make child support payments or to secure the division of property."

Therefore, in some respects both the judgment lien statute and the dissolution statutes speak to the same subject matter: assurance of payment of judgments.

■ When two statutes or two sets of statutes speak to the same subject matter, effect should be given to both acts if possible. *Wright v. Gettinger* (1981), Ind., 428 N.E.2d 1212; *Indiana State Highway Comm'n v. Bates & Rogers Constr.* (1983), Ind.App., 448 N.E.2d 321. If the two statutes cannot be harmonized or reconciled, then, as a general rule of statutory construction, the more specific or detailed statute should prevail over the more general statute. *Sanders v. State* (1984), Ind., 466 N.E.2d 424; *Stream Pollution Control Bd. v. Amax, Inc.* (1985), Ind.App., 475 N.E.2d 1157; *Indiana State Highway Comm'n, supra.*

■ A judgment lien is purely a creature of statute. *Wells v. Benton* (1886), 108 Ind. 585, 8 N.E. 444; *Uhrich v. Uhrich* (1977), 173 Ind.App. 133, 362 N.E.2d 1163, *trans. denied; Taylor v. McGrew* (1902), 29 Ind.App. 324, 64 N.E. 651. It arises by operation of law when the events enumerated in the judgment lien statute come to pass. *Sullivan State Bank v. First Nat'l Bank* (1925), 82 Ind.App. 419, 146 N.E. 403.

Clearly, between the judgment lien statute and the dissolution statutes the more particular is the dissolution statutes which govern security between divorcing spouses. Therefore, we first examine the effect of the dissolution statutes on Olin's claimed lien.

■ Absent a written agreement by the parties, a dissolution court *must* divide the parties' property in contemplation of a financial parting of the ways. *Johnson v. Johnson* (1984), Ind.App., 460 N.E.2d 978; *Henderson v. Henderson,* (1980) Ind.App., 401 N.E.2d 73. To accomplish this task, the trial court has the power to transfer real property between the parties. *Henderson, supra; Plese v. Plese* (1970) 146 Ind.App. 545, 257 N.E.2d 318. Inherent in the trial court's power to dispose of divorcing parties' property, is the power to award real estate free of liens or encumbrances so as to enable one spouse to pass title clear of any claim from the other spouse that would arise as a result of the divorce. IC 31–1–11.5–15 permits the dissolution court to complete the task of disposing of marriage property in a just and reasonable manner. It gives divorce courts the authority to fashion security for the payment of property settlement awards independent of the judgment lien statute by creating a lien on a given tract of real estate or by freeing a particular tract of real estate from a judgment lien.

■ Here, the dissolution court awarded certain property to Mary and expressly denied Olin a lien on the same real estate that he now wishes to foreclose. The decree clearly states,

"that further, the nursing home, all the equipment, inventory, all personal items, real estate are set over to petitioner [Mary] including the residence next door at 623 Adams will be turned over to her as her sole property and that *respondent [Olin] have no further interest in said real estate at 623 or 625 Adams whatsoever.*"

*Record* at 173 (emphasis supplied). Olin chose not to appeal this decree. We may not, after Mary's death, permit Olin to secure an interest in Mary's real estate that was denied him by the dissolution court. The dissolution court awarded Mary certain property in its decree and exercised its discretionary powers by withholding a lien on a particular tract of land. As these more specific statutes were designed to

precisely meet the needs of the divorcing citizens of Indiana, we conclude that the dissolution statutes control over the more general judgment lien statute; hence, pursuant to the specific language of the dissolution decree, no lien arose.

 Because Olin's award did not create a judgment lien against Mary's real estate on the date of the decree, Olin was a general creditor of Mary's estate and should have filed a claim against Mary's estate within five months of the first published notice to creditors. IC 29–1–14–1 (1982); [1] *Hicks v. Fielman* (1981), Ind.App., 421 N.E.2d 716. Thus, the trial court properly entered summary judgment in favor of Vironet and Binghams.

Judgment affirmed.

SULLIVAN, J., concurs with separate opinion.

MILLER, J. (sitting by designation), concurs.

SULLIVAN, Judge, concurring.

I concur. However, I fear possible misinterpretation of a statement in the opinion. In considering the general judgment lien provisions of I.C. 34–1–45–2 (Burns Code Ed.1973) vis-a-vis the security provision of the dissolution statutes, I.C. 31–1–11.5–15 (Burns Code Ed.Repl.1980), we state:

"As these more specific statutes were designed to precisely meet the needs of the divorcing citizens of Indiana, we conclude that the dissolution statutes control over the more general judgment lien statute, hence pursuant to the specific language of the dissolution decree, no lien arose."

It is my fear that some may read that conclusion to indicate mutual exclusivity.

Such an interpretation would be unwarranted.

Under our opinion today, the trial court retains flexibility. The court may enter a monetary judgment with respect to a particular property distribution obligation and have that judgment attach as a lien upon real estate pursuant to I.C. 34–1–45–2. In addition thereto, the court may direct additional security under I.C. 31–1–11.5–15 for payment of a different obligation.

Subject to this caveat, I concur in the opinion of my colleagues.

---

1. IC 29–1–14–1(a) provides:

"(a) All claims against a decedent's estate, other than expenses of administration and claims of the United States, and of the estate and any subdivision thereof, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees and legatees of the decedent, unless filed with the court in which such estate is being administered within:

(1) five (5) months after the date of the first published notice to creditors; or

(2) three (3) months after the court has revoked probate of a will, in accordance with IC 29–1–7–21, if the claimant was named as a beneficiary in that revoked will; whichever is later."